**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GEORGE HALKIAS AND LAUREN VALLE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SET FORTH, INC.,<br><br>Defendant. | Case No.: 1:24-cv-11993<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs George Halkias and Lauren Valle ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendant Set Forth, Inc. ("Defendant" or "Forth"), and alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant, and (4) there are more than 100 proposed Class members.

2. This Court has general personal jurisdiction over Defendant because Defendant is a resident and citizen of this district, Defendant conducts substantial business in this district, and the events giving rise to Plaintiff's claims arise out of Defendant's contacts with this district.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident and citizen of this district.

## PARTIES

4. Plaintiff George Halkias is a resident of Florida.

5. Plaintiff Lauren Valle is a resident and citizen of California.

6. Defendant Set Forth, Inc. is a corporation with its principal place of business located in Schaumburg, Illinois.

## FACTUAL ALLEGATIONS

**Forth's Business**

7. Defendant Forth represents that it "has been serving debt relief service providers with robust solutions that include CRM, marketing automation, payment processing and dedicated account management offerings."[1]

8. Defendant represents that it "is dedicated to protecting your privacy and providing you with the highest level of service."[2]

9. Defendant's Privacy Policy further represents that "To protect your personal information from unauthorized access and use, [it] uses security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. [It] also attempts to limit personal information access to only employees, agents and representatives who need to know."[3]

10. Plaintiffs and Class members provided certain Personally Identifying Information ("PII") to entities that do business with Defendant.

11. As a debt relief service provided provider with an acute interest in maintaining the confidentiality of the PII entrusted to it, Defendant is well-aware of the numerous data breaches

---

[1] *See* https://www.setforth.com/business/about-forth/ (last accessed Nov. 18, 2024).
[2] *See* https://www.setforth.com/privacy-policy/ (last accessed Nov. 18, 2024).
[3] *Id.*

that have occurred throughout the United States and its responsibility for safeguarding PII in its possession.

**The Data Breach**

12. According to Defendant, on May 21, 2024, Defendant "discovered suspicious activity from an unauthorized user on their systems" ("the Data Breach").[4]

13. Defendant claims that it launched "immediately implemented [its] incident response protocols, began an investigation, and engaged independent computer forensic specialists to help. The investigation determined, on July 1, 2024, that the unauthorized user gained access to documents on [its] systems. The review of potentially impacted documents determined that the following data elements may have been contained in the documents: names, Social Security numbers, dates of birth, and addresses.[5]

14. According to a notice of data breach filed with the Attorney General of Maine, the Data Breach has affected 1,500,000 individuals.[6]

15. Defendant began notifying affected individuals by sending them personally-addressed Notice Letters on or about November 8, 2024.[7]

16. The Notice Letter addressed to Plaintiffs informed them that their "name, address, and/or social security number" may have been compromised by the Data Breach.[8]

17. Defendant did not inform affected individuals of the root cause of the Data Breach.[9]

---

[4] *See* https://www.setforth.com/notice-of-data-security-incident/ (last accessed Nov. 18, 2024).
[5] *Id.*
[6] *See* Data Breach Notifications, Office of the Maine Attorney General, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/5c00fedb-134a-4436-b778-5df30b84cdab.html (last accessed Nov. 18, 2024).
[7] *See* Notice of Data Security Incident addressed to Plaintiffs, attached hereto as Exhibit 1 and Exhibit 2 ("Notice Letters").
[8] *Id.*
[9] *Id.*

18. Defendant did not state why more than six months elapsed between discovery of the Data Breach and identification of affected individuals.

19. Defendant failed to prevent the data breach because it did not adhere to commonly accepted security standards and failed to detect that its databases were subject to a security breach.

**Injuries to Plaintiffs and the Class**

20. On or about November 8, 2024, Plaintiff Halkias received a breach notification letter from Defendant indicating that his PII was compromised during the Data Breach.[10] According to the Notice Letter, the Data Breach may have exposed Plaintiff Halkias' name, address, and Social Security number.

21. As a result of the Data Breach, Plaintiff Halkias has suffered severe emotional distress and anxiety knowing that his name and Social Security number have been impacted. Plaintiff Halkias has also experienced a large uptick in fraudulent spam and phishing calls and text messages since the Data Breach.

22. Plaintiff Halkias is very concerned about the theft of his PII and anticipates spending substantial amounts of time and energy aimed at thwarting adverse effects as a result of the Data Breach.

23. On or about November 8, 2024, Plaintiff Valle received a breach notification letter from Defendant indicating that her PII was compromised during the Data Breach.[11] According to the Notice Letter, the Data Breach may have exposed Plaintiff Valle's name, address, and Social Security number.

24. As a result of the Data Breach Plaintiff Valle has suffered severe emotional distress and anxiety knowing that her name and Social Security number have been impacted. Plaintiff Valle

[10] *See Exhibit 1.*
[11] *See Exhibit 2.*

has also experienced a large uptick in fraudulent spam and phishing calls and text messages since the Data Breach.

25. Plaintiffs are very concerned about the theft of their PII and anticipate spending substantial amounts of time and energy aimed at thwarting adverse effects as a result of the Data Breach.

26. As a direct and proximate result of Defendant's actions and omissions in failing to protect Plaintiffs' PII, Plaintiffs and the Class have been damaged.

27. Plaintiffs and the Class have been placed at a substantial risk of harm in the form of credit fraud or identity theft and have incurred and will likely incur additional damages, including spending substantial amounts of time monitoring accounts and records, in order to prevent and mitigate credit fraud, identity theft, and financial fraud.

28. In addition to the irreparable damage that may result from the theft of PII, identity theft victims must spend numerous hours and their own money repairing the impacts caused by this breach. After conducting a study, the Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[12]

29. Plaintiffs and the Class will spend substantial time and expense (a) monitoring their accounts to identify fraudulent or suspicious charges; (b) cancelling and reissuing cards; (c) purchasing credit monitoring and identity theft prevention services; (d) attempting to withdraw funds linked to compromised, frozen accounts; (e) removing withdrawal and purchase limits on compromised accounts; (f) communicating with financial institutions to dispute fraudulent charges; (g) resetting automatic billing instructions and changing passwords; (h) freezing and

[12] U.S. Dep't of Justice, *Victims of Identity Theft*, *2014* (Nov. 13, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf.

unfreezing credit bureau account information; (i) cancelling and re-setting automatic payments as necessary; (j) paying late fees and declined payment penalties as a result of failed automatic payments; and (k) managing the severe anxiety that has been caused by their being personally threatened.

30. Plaintiffs and the Class have suffered severe emotional distress as a result of their PII being compromised and will continue to suffer for an indefinite period of time. Since Plaintiffs and the Class may not change their Social Security numbers, their heightened risk of becoming victims of fraud is now permanent. Plaintiffs and the Class will remain aware of both this permanent risk as well as their permanent inability to cure that risk until it manifests itself in the form of fraud.

31. Additionally, Plaintiffs and the Class have suffered or are at increased risk of suffering from, *inter alia*, the loss of the opportunity to control how their PII is used, the diminution in the value and/or use of their PII entrusted to Defendant, and loss of privacy.

**The Value of PII**

32. It is well known that PII, and financial account information in particular, is an invaluable commodity and a frequent target of hackers.

33. According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.[13]

[13] Javelin Strategy & Research, *Identity Fraud Hits All Time High With 16.7 Million U.S. Victims in 2017, According to New Javelin Strategy & Research Study* (Feb. 6, 2018), https://www.javelinstrategy.com/press-release/identity-fraud-hits-all-time-high-167-million-us-victims-2017-according-new-javelin.

34. People place a high value not only on their PII, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.[14]

35. People are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers."[15] There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiffs and Class members cannot obtain new numbers unless they become a victim of social security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."[16] The Social Security Administration's reactive security measures make Plaintiffs and Class Members especially prone to severe anxiety and emotional distress. Victims of a data breach must remain conscious of their vulnerability of identity theft, awaiting nefarious use of their social security information, while knowing they may not receive protection from that misuse until after it has occurred.

36. Defendant acknowledged the immense value of that PII had to Plaintiffs and the Class insofar as they sent them a document outlining "What You Can Do" and provided them with two years of credit monitoring services. However, the provision of credit monitoring services is

[14] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, https://www.ftc.gov/system/files/documents/public_comments/2017/10/00004-141444.pdf.

[15] Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger, (Feb. 10, 2015), https://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html.

[16] Social Security Admin., *Identity Theft and Your Social Security Number*, at 6-7, https://www.ssa.gov/pubs/EN-05-10064.pdf.

abbreviated, and the document that guides Plaintiffs and the Class in protecting their PII serves to emphasize that Defendant has placed the onus on those affected to retain the value of their PII.

**Industry Standards for Data Security**

37. In light of the numerous high-profile data breaches targeting companies like Target, Neiman Marcus, eBay, Anthem, Deloitte, Equifax, and Capital One, Defendant is, or reasonably should have been, aware of the importance of safeguarding PII, as well as of the foreseeable consequences of its systems being breached.

38. Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

a. Maintaining a secure firewall configuration;

b. Monitoring for suspicious or irregular traffic to servers;

c. Monitoring for suspicious credentials used to access servers;

d. Monitoring for suspicious or irregular activity by known users;

e. Monitoring for suspicious or unknown users;

f. Monitoring for suspicious or irregular server requests;

g. Monitoring for server requests for PII;

h. Monitoring for server requests from VPNs; and

i. Monitoring for server requests from Tor exit nodes.

39. The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[17] and protection of PII[18] which includes basic security standards applicable to all types of businesses.

---

[17] Start with Security: A Guide for Business, FTC (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[18] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting personalinformation.pdf.

40. The FTC recommends that businesses:

a. Identify all connections to the computers where you store sensitive information.

b. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

c. Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

d. Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e. Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks

f. Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g. Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h. Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i. Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

41. The FTC has also issued guidance on reactive measures entities should take after they have suffered a data breach. Notably, the FTC advises that such entities should not "make

misleading statements about the breach" or "withhold key details that might help consumers protect themselves and their information."[19]

42. Defendant failed to adhere to the FTC's guidance in their communications with affected individuals after the Data Breach occurred, as it withheld the "key detail" that affected individuals' PII was held for ransom by a known ransomware group.

43. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[20]

44. Because Defendant was entrusted with consumers' PII, it had, and has, a duty to consumers to keep their PII secure.

45. Consumers, such as Plaintiffs and the Class, reasonably expect that when they provide PII to companies or when those companies forward their PII to companies such as Defendant, that their PII will be safeguarded.

46. Nonetheless, Defendant failed to prevent the Data Breach. Had Defendant properly maintained and adequately protected its systems, it could have prevented the Data Breach.

---

[19] Federal Trade Commission, *Data Breach Response: A Guide for Business,* https://www.ftc.gov/business-guidance/resources/data-breach-response-guide-business.

[20] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement.

## CLASS ACTION ALLEGATIONS

47. Plaintiffs, individually and on behalf of all others, bring this class action pursuant to Fed. R. Civ. P. 23.

48. The proposed Class and California Subclass are defined as follows:

> All persons whose PII was maintained on Defendant's servers and was compromised in the Data Breach (the "Class")
>
> All residents of California whose PII was maintained on Defendant's servers and was compromised in the Data Breach (the " California Subclass").

49. Plaintiffs reserve the right to modify, change, or expand the definitions of the proposed Class based upon discovery and further investigation.

50. *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. Although the precise number is not yet known to Plaintiffs, Defendant has reported that the number of persons affected by the Data Breach is approximately 1.5 million individuals.[21] The Class members can be readily identified through Defendant's records.

51. *Commonality*: Questions of law or fact common to the Class include, without limitation:

a. Whether Defendant owed a duty or duties to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and obtaining their PII;

b. Whether Defendant breached that duty or those duties;

c. Whether Defendant failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records to protect against known and anticipated threats to security;

d. Whether the security provided by Defendant was satisfactory to protect customer information as compared to industry standards;

e. Whether Defendant misrepresented or failed to provide adequate information to customers regarding the type of security practices used;

---

[21] *See supra* fn 6.

f. Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiffs' and the Class's PII secure and prevent loss or misuse of that PII;

g. Whether Defendant acted negligently in connection with the monitoring and protecting of Plaintiffs' and Class's PII;

h. Whether Defendant's conduct was intentional, willful, or negligent;

i. Whether Defendant violated any and all statutes and/or common law listed herein;

j. Whether the Class suffered damages as a result of Defendant's conduct, omissions, or misrepresentations; and

k. Whether the Class is entitled to injunctive, declarative, and monetary relief as a result of Defendant's conduct.

52. *Typicality*: The claims or defenses of Plaintiffs are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiffs, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiffs.

53. *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions including, but not limited to, data breaches.

54. *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiffs and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

55. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is

impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

56. *Manageability*: Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

57. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

58. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

59. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE/ NEGLIGENCE PER SE
### (*Brought on behalf of the Class*)

60. Plaintiffs realleges and incorporates by reference preceding paragraphs 1 through 59 as if fully set forth herein.

61. Defendant owed a duty of care to Plaintiffs and Class members to use reasonable means to secure and safeguard the entrusted PII, to prevent its unauthorized access and disclosure to third parties, to guard it from theft, and to detect any attempted or actual breach of its systems. These common law duties existed because Plaintiffs and Class members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiffs and Class members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, but Defendant knew that it was more likely than not Plaintiffs and Class members would be harmed by such exposure of their PII.

62. Defendant's duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII. Various FTC publications and data security breach orders further form the basis of Defendant's duties. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

63. Defendant's violations of Section 5 of the FTC Act constitute negligence per se.

64. Defendant breached the aforementioned duties when it failed to use security practices that would protect the PII provided to it by Plaintiffs and Class members, thus resulting in unauthorized third-party access to the Plaintiffs' and Class members' PII.

65. Defendant further breached the aforementioned duties by failing to design, adopt, implement, control, manage, monitor, update, and audit its processes, controls, policies, procedures, and protocols to comply with the applicable laws reasonable standards of care necessary to safeguard and protect Plaintiffs' and Class members' PII within its possession, custody, and control.

66. As a direct and proximate cause of failing to use appropriate security practices, Plaintiffs' and Class members' PII was disseminated and made available to unauthorized third parties.

67. Defendant admitted that Plaintiffs' and Class members' PII was wrongfully disclosed as a result of the breach.

68. The breach caused direct and substantial damages to Plaintiffs and Class members, as well as the possibility of future and imminent harm through the dissemination of their PII and the greatly enhanced risk of credit fraud or identity theft.

69. By engaging in the forgoing acts and omissions, Defendant committed the common law tort of negligence. For all the reasons stated above, Defendant's conduct was negligent and departed from reasonable standards of care including by, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; and failing to provide adequate and appropriate supervision of persons having access to Plaintiffs' and Class members' PII.

70. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and the Class, their PII would not have been compromised.

71. Neither Plaintiffs nor the Class contributed to the breach or subsequent misuse of their PII as described in this Complaint. As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and the Class have been put at an increased risk of credit fraud or identity

theft, and Defendant has an obligation to mitigate damages by providing adequate credit and identity monitoring services. Defendant is liable to Plaintiffs and the Class for the reasonable costs of future credit and identity monitoring services for a reasonable period of time, substantially in excess of one year. Defendant is also liable to Plaintiffs and the Class to the extent that they have directly sustained damages as a result of identity theft or other unauthorized use of their PII, including the amount of time Plaintiffs and the Class have spent and will continue to spend as a result of Defendant's negligence. Defendant is also liable to Plaintiffs and the Class to the extent their PII has been diminished in value because Plaintiffs and the Class no longer control their PII and to whom it is disseminated. Defendant is further liable to Plaintiffs and the Class to the extent that they have suffered anxiety and emotional distress as a result of their heightened risk of becoming victims of credit fraud and identity theft.

**COUNT II**
**INVASION OF PRIVACY**
**(*Brought on behalf of the Class*)**

72. Plaintiffs reallege and incorporate by reference preceding paragraphs 1 through 71 as if fully set forth herein.

73. Plaintiffs and Class members have objective reasonable expectations of solitude and seclusion in their personal and private information and the confidentiality of the content of personal information and non-public medical information.

74. Defendant invaded Plaintiffs' and the Class's right to privacy by allowing unauthorized access to their PII and by negligently maintaining the confidentiality of Plaintiffs' and the Class's PII, as set forth above.

75. The intrusion was offensive and objectionable to Plaintiffs, the Class, and to a reasonable person of ordinary sensibilities in that Plaintiffs' and the Class's PII was disclosed without prior written authorization from Plaintiffs and the Class.

76. The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiffs and the Class provided and disclosed their PII to Defendant privately with an intention that the PII would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

77. As a direct and proximate result of Defendant's above acts, Plaintiffs' and the Class's PII was viewed, distributed, and used by persons without prior written authorization and Plaintiffs and the Class suffered damages as described herein.

78. Defendant is guilty of oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiffs' and the Class's PII with a willful and conscious disregard of their right to privacy.

79. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause Plaintiffs and the Class severe and irreparable injury in that the PII maintained by Defendant can be viewed, printed, distributed, and used by unauthorized persons. Plaintiffs and the Class have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiffs and the Class, and Defendant may freely treat Plaintiffs' and the Class's PII with sub-standard and insufficient protections.

**<u>COUNT III</u>**
**UNJUST ENRICHMENT**
**(*Brought on behalf of the Class*)**

80. Plaintiffs reallege and incorporate by reference preceding paragraphs 1 through 79 as if fully set forth herein.

81. Plaintiffs and the Class have an interest, both equitable and legal, in their PII that was conferred upon, collected by, and maintained by Defendant and that was ultimately compromised in the data breach.

82. Defendant, by way of its acts and omissions, knowingly and deliberately enriched itself by saving the costs it reasonably should have expended on cybersecurity measures to secure Plaintiffs' and the Class's PII.

83. Defendant also understood and appreciated that the PII pertaining to Plaintiffs and the Class was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that PII.

84. Instead of providing for a reasonable level of security that would have prevented the breach—as is common practice among companies entrusted with such PII—Defendant instead made a conscious and opportunistic calculation to increase its own profits at the expense of Plaintiffs' and the Class's security. Nevertheless, Defendant continued to obtain the benefits conferred on it by Plaintiffs and the Class. The benefits conferred upon, received, and enjoyed by Defendant were not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain these benefits.

85. Plaintiffs and the Class suffered as a direct and proximate result. As a result of Defendant's decision to profit rather than provide requisite security, and the resulting breach disclosing Plaintiffs' and the Class's PII, Plaintiffs and the Class suffered and continue to suffer

considerable injuries in the forms of, *inter alia,* attempted identity theft, time and expenses mitigating harms, diminished value of PII, loss of privacy, increased risk of harm, and severe anxiety and emotional distress.

86. Thus, Defendant engaged in opportunistic conduct in spite of its duties to Plaintiffs and the Class, wherein it profited from interference with Plaintiffs' and the Class's legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of its conduct.

87. Accordingly, Plaintiffs, on behalf of themselves and the Class, respectfully request that this Court award relief in the form of restitution or disgorgement in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically, the amounts that Defendant should have spent to provide reasonable and adequate data security to protect Plaintiffs' and the Class's PII, and/or compensatory damages.

**COUNT IV**
**CALIFORNIA CONSUMER PRIVACY ACT ("CCPA")**
**Cal. Civ. Code § 1798, *et seq.***
***(Brought on Behalf of the California Subclass)***

88. Plaintiff Valle realleges and incorporates by reference preceding paragraphs 1 through 87 as if fully set forth herein.

89. The California Legislature has explained: "The unauthorized disclosure of personal information and the loss of privacy can have devasting effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm."[22]

---

[22] California Consumer Privacy Act (CCPA) Compliance, https://buyergenomics.com/ccpa-complience/.

90. The CCPA imposes an affirmative duty on businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected. Defendant failed to implement such procedures which resulted in the Data Breach.

91. It also requires "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party . . . [to] require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(c).

92. Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

93. Plaintiff Valle and California class members are "consumer[s]" as defined by Civ. Code § 1798.140(g) because they are "natural person[s] who [are] California resident[s], as defined in Section 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017."

94. Defendant is a "business" as defined by Civ. Code § 1798.140(c) because it:

a. is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners";

b. "collects consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information";

c. does business in California; and

d. has annual gross revenues in excess of $25 million; annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers, households, or devices; or derives 50 percent or more of its annual revenues from selling consumers' personal information.

95. The PII at issue is personal information as defined by Civil Code § 1798.81.5(d)(1)(A) because it contains Plaintiff's and the California subclass members' unencrypted first and last names and Social Security numbers among other information.

96. Plaintiff and California subclass members' PII was subject to unauthorized access and exfiltration, theft, or disclosure because their PII, including name and contact information was wrongfully taken, accessed, and viewed by unauthorized third parties.

97. The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiff Valle's and California subclass members' PII. Defendant failed to implement reasonable security procedures to prevent an attack on its server or network, including its email

system, by hackers and to prevent unauthorized access of Plaintiff Valle's and California subclass members' PII as a result of this attack.

98. On November 20, 2024, Plaintiff Valle provided notice to Defendant pursuant to Cal. Civ. Code § 1798.150(b)(1), identifying the specific provisions of the CCPA Plaintiff alleges Defendant has violated or are violating. Although a cure is not possible under the circumstances, if (as expected) Defendant is unable to cure or do not cure the violation within 30 days, Plaintiff will amend this Complaint to pursue actual or statutory damages as permitted by Cal. Civ. Code § 1798.150(a)(1)(A).

99. Plaintiff Valle seeks all relief available under the CCPA including damages to be measured as the greater of actual damages or statutory damages in an amount up to seven hundred and fifty dollars ($750) per consumer per incident. See Cal. Civ. Code § 1798.150(a)(1)(A) & (b).

100. As a result of Defendant's failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiff Valle seeks injunctive relief, including public injunctive relief, declaratory relief, and any other relief as deemed appropriate by the Court.

**COUNT V**
**CALIFORNIA CONSUMER RECORDS ACT**
**Cal. Civ. Code § 1798.82, *et seq*.**
***(Brought on Behalf of the California Subclass)***

101. Plaintiff Valle realleges and incorporates by reference preceding paragraphs 1 through 100 as if fully set forth herein.

102. Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted

personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay. "

103. The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code, § 1798.82(b).

104. Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

a. The security breach notification shall be written in plain language;

b. The security breach notification shall include, at a minimum, the following information:

   i. The name and contact information of the reporting person or business subject to this section;

   ii. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

c. If the information is possible to determine at the time the notice is provided, then any of the following:

   i. The date of the breach;

   ii. The estimated date of the breach; or

   iii. The date range within which the breach occurred. The notification shall also include the date of the notice.

d. Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

e. A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

f. The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

105. The Data Breach described herein constituted a "breach of the security system" of Defendant.

106. As alleged above, Defendant unreasonably delayed informing Plaintiff Valle and California subclass members about the Data Breach, affecting their PII, after Defendant knew the Data Breach had occurred.

107. Defendant failed to disclose to Plaintiff Valle and the California subclass members, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, PII when Defendant knew or reasonably believed such information had been compromised.

108. Defendant's ongoing business interests gave Defendant incentive to conceal the Data Breach from the public to ensure continued revenue.

109. Upon information and belief, no law enforcement agency instructed Defendant that timely notification to Plaintiff Valle and the California subclass members would impede its investigation.

110. As a result of Defendant's violation of California Civil Code section 1798.82, Plaintiff Valle and the California subclass members were deprived of prompt notice of the Data

Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff Valle and California subclass members because their stolen information would have had less value to identity thieves.

111. As a result of Defendant's violation of California Civil Code section 1798.82, Plaintiff Valle and the California subclass members suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

112. Plaintiff Valle and the California subclass members seek all remedies available under California Civil Code section 1798.84, including, but not limited to the damages suffered by Plaintiff Valle and the other California subclass members, including but not limited to benefit-of-the-bargain and time spent monitoring their accounts for identity theft and medical identity theft, and equitable relief.

113. Defendant's misconduct as alleged herein is fraud under California Civil Code section 3294(c)(3) in that it was deceit or concealment of a material fact known to Defendant conducted with the intent on the part of Defendant of depriving Plaintiff Valle and the California subclass members of "legal rights or otherwise causing injury." In addition, Defendant's misconduct as alleged herein is malice or oppression under California Civil Code section 3294(c)(1) and (c) in that it was despicable conduct carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiff Valle and the California subclass members and despicable conduct that has subjected Plaintiff Valle and the California subclass members to cruel and unjust hardship in conscious disregard of their rights. As a result, Plaintiff Valle and the California subclass members are entitled to punitive damages against Defendant under California Civil Code section 3294(a).

**COUNT VI**
**CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
***(Brought on Behalf of the California Subclass)***

114. Plaintiff Valle realleges and incorporates by reference preceding paragraphs 1 through 113 as if fully set forth herein.

115. Defendant regularly does business in California. Defendant violated California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code, § 17200, et seq.) by engaging in unlawful, unfair, or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in the UCL, including, but not limited to, the following:

a. by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard PII from unauthorized disclosure, release, data breach, and theft; representing and advertising that it did and would comply with the requirement of relevant federal and state laws pertaining to the privacy and security of the California class members' PII; and omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the PII;

b. by soliciting and collecting California class members' PII with knowledge that the information would not be adequately protected; and by storing Plaintiff's Valle and California subclass members' PII in an unsecure electronic environment;

c. by failing to disclose the Data Breach in a timely and accurate manner, in violation of California Civil Code section 1798.82;

d. by violating the privacy and security requirements of HIPAA, 42 U.S.C. §1302d, *et seq.*;

e. by violating the CMIA, California Civil Code section 56, et seq.; and

f. by violating the CCRA, California Civil Code section 1798.82.

116. These unfair acts and practices were immortal, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff Valle and California subclass members. Defendant's practices were also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws like the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1302d, *et seq.*, CMIA, Cal. Civ. Code, § 56, *et seq.*, and the CCRA, Cal. Civ. Code, § 1798.81.5.

117. As a direct and proximate result of Defendant's unfair and unlawful practices and acts, Plaintiff Valle and the California subclass members were injured and lost money or property, including but not limited to the overpayments Defendant received to take reasonable and adequate security measures (but did not), the loss of their legally protected interest in the confidentiality and privacy of their PII, and additional losses described above.

118. Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff Valle's and California subclass members' PII and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Valle and the California subclass members.

119. Plaintiff Valle seeks relief under the UCL, including restitution to the California subclass members of money or property that the Defendant may have acquired by means of Defendant's deceptive, unlawful, and unfair business practices, declaratory relief, attorney fees,

costs and expenses (pursuant to Cal. Code Civ. Proc., § 1021.5), and injunctive or other equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendant as follows:

a. For an order certifying the proposed Class, appointing Plaintiffs as Representatives of the proposed Class, and appointing the law firms representing Plaintiffs as counsel for the Class;

b. For compensatory and punitive and treble damages in an amount to be determined at trial;

c. Payment of costs and expenses of suit herein incurred;

d. Both pre-and post-judgment interest on any amounts awarded;

e. Payment of reasonable attorneys' fees and expert fees;

f. Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury.

Dated: November 21, 2024

Respectfully Submitted,

By: /s/ *Gary M. Klinger*

Gary M. Klinger (IL Bar No. 6303726)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

Charles E. Schaffer*
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
cschaffer@lfsblaw.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel: (513) 345-8291
jgoldenberg@gs-legal.com

Brett R. Cohen*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com

*Counsel for Plaintiffs and Proposed Class*

**Pro Hac Vice Forthcoming*